UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARON MICHAEL SWING,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, et al.,<br>Respondents. | No. 1:26-cv-06764-DC-JDP (HC)<br><br><u>ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PETITION FOR WRIT OF HABEAS CORPUS</u><br><br>(Doc. Nos. 1, 2) |

While a federal immigration detainee, Petitioner filed this motion for a temporary restraining order (Doc. No. 2) and petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 (Doc. No. 1). Petitioner challenges the constitutionality of his immigration detention and the restraints placed upon his liberty following his release from custody. (Doc. Nos. 1, 2, 10, 12, 15.)

## BACKGROUND

### A. Relevant Factual Background

Petitioner, a citizen of Hong Kong, was first admitted to the United States pursuant to a F-1 visa in 2017. (Doc. No. 1 at 2.) In July 2022, the Department of Homeland Security, through the United States Citizenship and Immigration Services, granted Petitioner employment authorization pursuant to the Deferred Enforced Departure benefits enacted for Hong Kong residents. (Doc. Nos. 1 at 2–3; 1-1 at 52–53; 6-1 at 3.) The employment authorization was valid for the period of

July 25, 2022, through February 5, 2023. (Doc. No. 1-1 at 52.) In October 2022, Petitioner failed to enroll in school as required to maintain his F-1 student status. (Doc. Nos. 6 at 1; 6-1 at 3.) In April 2024, the Department of State terminated Petitioner's F-1 status due to his earlier failure to enroll in classes. (Doc. No. 6-1 at 3.) On August 13, 2026, when Petitioner was attempting to board a domestic flight, he was detained by immigration authorities and charged with inadmissibility for failing to maintain his F-1 student status. (Doc. Nos. 1 at 3; 6-1 at 2–3.)

On September 4, 2026, Petitioner was granted release on a $5,000 bond, subject to his enrollment in the alternatives to detention program "as determined by the Department of Homeland Security." (Doc. No. 10-1 at 1.) Upon his release from custody, Petitioner was enrolled in the Alternatives to Detention program and Intensive Supervision Appearance Program ("ISAP"). (Doc. Nos. 10, 10-1.) These programs impose several obligations on Petitioner, including electronic monitoring via a "non-removable [GPS] ankle bracelet," home visits every twelve weeks, and in-person reporting at an ISAP office every eight weeks. (Doc. No. 10-1.) A curfew may also be imposed upon Petitioner. (*Id.* at 3.) Neither party reserved its right to appeal the bond determination, making it administratively final. (*Id.* at 2); *see also Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (accepting the government's argument that the immigration judge's bond order is administratively final because it was not appealed).

**B. Relevant Procedural Background**

On August 24, 2026, Petitioner filed the pending petition for a writ of habeas corpus and motion for a temporary restraining order, asserting that Respondents violated his constitutional right to due process by detaining him without prior notice and a pre-deprivation bond hearing and seeking relief in the form of release without the imposition of restraints on his liberty and with restrictions on re-detention. (*See* Doc. Nos. 1, 2.) On August 27, 2026, Respondents filed an opposition to Petitioner's motion and petition, asserting that Petitioner is not entitled to relief because, in part, his detention was lawful under 8 U.S.C. § 1226(a) and the procedural protections provided thereunder satisfy due process. (Doc. No. 6.)

On September 27, 2026, Petitioner informed the court that he had been released from custody following a custody redetermination hearing, but "Respondents continue to restrict [his]

liberty by subjecting him to an Order of Release on Recognizance with an Intensive Supervision Appearance Program . . . and the wearing of a GPS monitoring device"—restraints that he was not subject to prior to his contested detention. (Doc. Nos. 10; 10-1.) That same day, Respondents filed a notice of mootness in which they argue that Petitioner's release mooted his petition for a writ of habeas corpus, and that this court should not "intervene" with the conditions placed on him pursuant to his release from custody. (Doc. No. 11.) In response, Petitioner argues that the petition is not moot because of the ISAP program's requirements and cites to decisions supporting the proposition that electronic monitoring and ongoing supervision restrictions constitute collateral consequences sufficient to maintain a live controversy for habeas corpus proceedings. (Doc. No. 12).

On October 5, 2026, the court ordered the parties to substantively address whether there are factual or legal issues in this case that materially distinguish it from this court's recent decision in *Oliveira Tinoco v. Albarran*, No. 1:26-cv-05505-DC-CKD (HC), 2026 WL 2949219 (E.D. Cal. Oct. 1, 2026). (Doc. No. 13.) In *Oliveira Tinoco*, this court found that a live controversy existed after the petitioner's release from the immigration detention facility and concluded that a post-deprivation bond hearing cannot suffice as a post hoc cure for the earlier constitutional violation in which the government failed to provide notice and a pre-deprivation bond hearing before revoking the petitioner's government-sanctioned liberty. 2026 WL 2949219, at *3–7. Respondents argue in their supplemental brief that, unlike in *Oliveira Tinoco*, the immigration judge's bond order releasing Petitioner is administratively final and therefore moots Petitioner's petition. (Doc. No. 14.) Petitioner counters in his supplemental brief that, like the petitioner in *Oliveira Tinoco*, his petition is not moot because he is suffering "a continuing injury that flow[s] from his unlawful detention"—namely, the restraints placed on his liberty following his release from custody. (Doc. No. 15 at 2.)

## LEGAL STANDARD

"[T]he principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of . . . American legal traditions since the thirteenth century." *Padilla v. U.S. Immigr. and Customs Enf't*, No. 24-2801, 2026 WL 2822044, at *16 (9th Cir.

2026). The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). 28 U.S.C. § 2241(c)(3). A petitioner must be "incarcerated—or, as here, in [immigration] custody—at the time a habeas petition is filed." *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007). "History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient . . . to support the issuance of habeas corpus." *Jones v. Cunningham*, 371 U.S. 236, 240 (1963).

## DISCUSSION

### A. Mootness

"[A] case becomes moot when it no longer presents a case or controversy under Article III, § 2 of the Constitution." *Abdala*, 488 F.3d at 1063–1065 (citation modified) (finding that the petitioner's "deportation [did] not give rise to collateral consequences that [were] redressable by success on his original petition" which challenged "only the length of his detention at the [immigration] facility"). For Petitioner's "habeas petition to continue to present a live controversy after his release . . . there must be some remaining collateral consequence that may be redressed by success on the petition." *Panosyan*, 854 F. App'x at 788 (citation modified) (finding release on bond pursuant to an administratively final bond order to moot a noncitizen's challenge to their re-detention); *see also Oliveira Tinoco,* 2026 WL 2949219, at *3–4 (finding a live controversy because the bond order was not administratively final and not reaching the implications of the petitioner's newly-imposed supervision requirements).

Respondents argue that Petitioner's release pursuant to a now administratively final bond order moots his request for relief. (Doc. Nos. 11, 14.) Petitioner argues that there remains a live controversy before this court because Respondents continue to restrain his liberty by virtue of the ankle monitor and additional requirements he was subjected to as a condition of his release. (Doc. Nos. 10, 12, 15.) Petitioner's position is well supported by decisions from district courts around

the country that have found that post-release conditions analogous to those imposed upon Petitioner here "easily" satisfy the requirements of "custody" as contemplated by 28 U.S.C. § 2241(c)(3). *See Harrington v. Albarran*, No. 26-cv-01889-JST, 2026 WL 800113, at *4–5 (N.D. Cal. Mar. 23, 2026) (finding the imposition of ankle monitoring and ISAP supervision to "easily" satisfy custody requirements); *M.I.R.M. v. Mullin*, No. 2:26-cv-01543-DJC-AC, 2026 WL 1123536, at *2 (E.D. Cal. Apr. 24, 2026) ("Petitioners qualify as 'in custody' for purposes of habeas jurisdiction because they are subject to several restraints to which the general public is not" pursuant to the restrictions imposed by the Order of Supervision.); *Abdeltawab v. Armant*, No. 26-cv-01520-MWF-DTB, 2026 WL 1710301, at *2 (C.D. Cal. June 4, 2026) ("The sum of Petitioner's monitoring, ISAP enrollment, and geographic restriction therefore constitutes custody in the habeas context . . . . Respondents have effectively returned Petitioner to custody."); *A.B.D. v. Wamsley*, No. 6:25-cv-02014-AA, 2026 WL 178306, at *8 (D. Or. Jan. 22, 2026) ("[T]he Court determines that Respondents, by self-described 'intensive supervision measures,' continue to maintain custody of Petitioners and that Petitioners may seek and be granted habeas relief from the on-going restraints on their liberty."); *Batz Barreno v. Baltasar*, 816 F. Supp. 3d 1255, 1258 (D. Colo. 2026) ("Petitioner remains in custody through the conditions of release imposed by ICE."); *Orellana Juarez v. Moniz*, 788 F. Supp. 3d 61, 68 (D. Mass. 2025) (finding petitioner to be in custody where he is required, in part, to "wear a 24/7 GPS device on his ankle which allows ICE to monitor him constantly" and he is enrolled "in an intensive supervision program which includes the requirements of regular reporting, allowing ICE to enter his residence at home visits."); *Chavez Velasco v. Lyons*, No. 5:26-cv-00491, 2026 WL 2279359, at *4 (S.D. Tex. Aug. 7, 2026) ("It is well established that custody extends beyond physical detention such that a petitioner remains in immigration custody when their liberty is restrained.").

As with the numerous district courts around the country, this court finds that the ISAP program's electronic monitoring and reporting obligations constitute ongoing "custody" for the purposes of 28 U.S.C. § 2241(c)(3). Therefore, Petitioner's release from the immigration detention facility pursuant to an administratively final bond order did not moot his petition because he remains in custody by virtue of the continuing restraints on his liberty that flow from

his immigration detention.

**B. Due Process**

This court has held that noncitizens admitted to the United States pursuant to a visa, but not detained within a reasonable time after the expiration of their lawful status, develop a vested liberty interest in remaining free from detention such that due process requires the government to provide adequate notice and a pre-deprivation hearing before detaining the noncitizen.[1] *See Oliveira Tinoco*, 2026 WL 2949219, at *5–7 (granting motion for temporary restraining order and petition for a writ of habeas corpus on due process grounds); *Kaur v. Chestnut*, No. 1:26-cv-05349-DC-CSK, 2026 WL 2790742, at *1 (E.D. Cal. Sept. 17, 2026) (adopting findings and recommendations, granting petition for a writ of habeas corpus on due process grounds, and ordering that the petitioner who had overstayed their visa be released immediately); *Zhou v. Warden, Cal. City Immigr. Processing Ctr.*, No. 1:26-cv-05774-DC-CSK, 2026 WL 2825584, at *1 (E.D. Cal. Sept. 21, 2026) (same).

Petitioner was detained by immigration authorities nearly four years after he failed to maintain his F-1 student status by not enrolling in classes, and more than two years after the Department of State formally revoked his F-1 student status. (Doc. No. 6-1 at 3.) Respondents do not explain the delay in Petitioner's detention, and this court finds unpersuasive their attempt to diminish the implications of the delay by arguing that it was "only . . . a little over two years" between the formal revocation of Petitioner's F-1 status and his immigration detention. (*See* Doc. No. 14 at 3.) Respondents also do not explain why prior notice or a pre-deprivation hearing could not have been provided to Petitioner before detaining him. Therefore, for the reasons set forth in *Oliveira Tinoco*, this court will grant Petitioner's motion for temporary restraining order (Doc.

/////

/////

/////

[1] This court has determined that it need not reach the parties' arguments as to the implications of Deferred Enforced Departure in place for Hong Kong residents because Petitioner's admission to the country pursuant to a lawful nonimmigrant status is determinative on its own for the reasons set forth in *Oliveira Tinoco*, 2026 WL 2949219, at *4–7.

No. 2) and petition for writ of habeas corpus (Doc. No. 1) as to Count Three.[2] *See Oliveira Tinoco*, 2026 WL 2949219, at *4–7. Further, as the court found in *Oliveira Tinoco*, the proper remedy for Respondents' failure to provide Petitioner with a constitutionally compliant pre-deprivation bond hearing is Petitioner's return to the "status quo ante litem, meaning [Petitioner's] last uncontested status immediately preceding detention." *Id.* at *6 (citation modified).

**CONCLUSION**

For the reasons set forth above,

1. Petitioner's petition for writ of habeas corpus (Doc. No. 1) and motion for a temporary restraining order (Doc. No. 2) are GRANTED;
2. Respondents are ORDERED to, within five (5) days of the date of entry of this order:
    a. RESTORE Petitioner to the status quo immediately preceding his detention in August 2026, including removal of his ankle monitor and applicable monitoring requirements;
    b. RETURN all of Petitioner's documents and possessions (e.g., passport, identification, work permit, Social Security card, etc.); and
    c. FACILITATE the return of the bond Petitioner posted in September 2026;
3. Respondents are ORDERED to, within ten (10) days of the date of entry of this order, FILE a notice of compliance with this court;
4. Respondents are permanently ENJOINED AND RESTRAINED from re-arresting Petitioner unless and until they first provide no fewer than seven (7) days' notice

---

[2] Because the court is granting the petition on the due process claim (Count Three), the court need not address any additional grounds raised in the petition. *See N.K. v. Noem*, No. 1:26-cv-00292-KES-SAB, 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1166 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release").

and a pre-deprivation hearing during which a neutral decisionmaker considers whether Petitioner is a danger to the community or flight risk such that his physical custody is required; and

5. The Clerk of the Court is directed to enter judgment for Petitioner and close this case.

IT IS SO ORDERED.

Dated: **October 14, 2026**

Dena Coggins
United States District Judge